United States District Court
District Of Maine

| | |
|---|---|
| Travis McEwen, individually and on behalf of all others similarly situated, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>National Rifle Association of America, )<br>)<br>and )<br>)<br>InfoCision, Inc. d/b/a InfoCision )<br>Management Corporation, )<br>)<br>Defendants. ) | Docket No. |

## Class Action Complaint
## Injunctive Relief Sought; And Demand For Jury Trial

1.      Under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and applicable regulations, Plaintiff Travis McEwen brings this Class Action Complaint against the National Rifle Association of America and InfoCision, Inc. to: (1) stop their unlawful practice of making unsolicited telemarketing calls with an automatic telephone dialing system ("ATDS") without consumers' prior express consent, (2) stop their unlawful practice of calling consumers who are on the National Do Not Call Registry, and (3) obtain redress for all persons injured by Defendants' unlawful conduct, including for willfully and knowingly violating the TCPA and

applicable regulations. Plaintiff alleges as follows upon personal knowledge as to his own acts and experiences, and as to all other matters upon information and belief, including investigation conducted by his attorneys.

## I.     Nature of Action

2.     Together, the National Rifle Association of America ("the NRA") and InfoCision, Inc. ("InfoCision") have created and sustained an aggressive—and unlawful—telemarketing campaign aimed at selling memberships and soliciting contributions to the NRA. As part of this nationwide campaign, Defendants use an ATDS to make autodialed or pre-recorded calls to consumers across the country without those consumers' consent, including to consumers whose numbers are listed on the National Do Not Call Registry.

3.     Plaintiff is one of numerous consumers whose rights have been violated by this unlawful telemarketing campaign. Plaintiff placed his telephone number on the National Do Not Call Registry in 2003 to avoid unsolicited telemarketing calls, and he never consented to receiving automatically dialed calls from the NRA. Nonetheless, he received a barrage of calls from InfoCision on behalf of the NRA asking him to join the organization. Even after he expressly asked them to stop calling him, he received dozens of calls.

4.     By making these telephone calls, Defendants caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. These harms and injuries include the aggravation, nuisance, and invasions of privacy that result from the receipt of unwanted calls, in addition to the amounts consumers paid to their wireless carriers for the receipt of unwanted calls. And the calls interfered with the consumers' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendants also caused substantial injury to the phones of Plaintiff and the Class members by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes.

5.     Plaintiff brings this class action for violations of the TCPA against Defendants and their present, former, and future direct and indirect parent companies, subsidiaries, affiliates, agents, and related entities.

6.     Plaintiff seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers in violation of the TCPA, in addition to all statutory damages under the TCPA, costs and reasonable attorneys' fees.

## II.    Jurisdiction And Venue

7.     This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343 because Plaintiff's claims under 47 U.S.C.

§ 227 arise under the laws of the United States and under an Act of Congress providing a private right of action for the deprivation of specified rights and for the protection of civil rights.

8.     This Court has personal jurisdiction over Defendants because they do business in Maine and Defendants committed many of the wrongful acts alleged in this Complaint in Maine.

9.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Plaintiff received the telephone calls at issue within this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District. Under Rule 3(b) of the Rules of this Court, this action is properly filed in Portland.

10.     Under Fed. R. Civ. P. 38(b) and Local Rule 38, Plaintiff demands a trial by jury on all claims and defenses triable to a jury.

## III.   Parties

11.     Plaintiff Travis McEwen is a citizen of the United States and is a resident of the town of Casco in Cumberland County, Maine.

12.     Defendant the NRA is a corporation incorporated and existing under the laws of the State of New York with its headquarters in Fairfax, Virginia. The NRA, both directly and through various affiliates, conducts business throughout the state of Maine and the United States.

13.    Defendant InfoCision is a corporation incorporated and existing under the laws of the State of Delaware with its headquarters in Akron, Ohio. InfoCision, both directly and through various affiliates, conducts business throughout the state of Maine and the United States.

## IV.    Factual Allegations

### A.    Defendants use unsolicited telemarketing calls to solicit memberships for the NRA.

14.    The NRA is a membership-based organization. It solicits and collects membership fees to further its work in firearms advocacy, training, and education.

15.    The NRA, on its own and through agents like InfoCision, has an all-too-familiar and plainly unlawful method of recruiting new members: unsolicited telemarketing.

16.    InfoCision is the nation's second-largest privately held teleservices company. It provides "a full spectrum of direct marketing services" to its clients, including through the use of call centers and direct mailing.

17.    The NRA has a marketing contract with InfoCision that instructs or allows InfoCision to make telemarketing calls on behalf of the NRA.

18.     InfoCision and the NRA place thousands of telemarketing calls each day on behalf of the NRA to consumers nationwide. InfoCision makes these calls for the express purpose of soliciting call recipients to purchase memberships or other products from or through the NRA. InfoCision places many of these calls to numbers that consumers have placed on the National Do Not Call Registry.

19.     The NRA has a sister organization: the NRA Foundation, which—unlike the NRA—is a 501(c)(3) charitable organization, organized and existing under the laws of the District of Columbia. As the NRA notes on its website, the NRA Foundation operates as a distinct entity with a distinct purpose: "Establishing the NRA Foundation, a 501 (c) (3) tax-exempt organization, provided a means to raise millions of dollars to fund gun safety and educational projects of benefit to the general public. Contributions to the Foundation are tax-deductible . . . ."[1]

20.     InfoCision placed the solicitation calls subject to this complaint on behalf of the NRA—not the NRA Foundation. The NRA Foundation does not solicit memberships in the NRA.

21.     As the NRA specifically notes on the membership application portion of its website,[2] membership fees go to the NRA, not the NRA

---

[1] https://home.nra.org/about-the-nra/ (last visited April?, 2020).
[2] https://membership.nra.org/Join/Annuals (last visited April ?, 2020).

Foundation. Indeed, the NRA discloses that it uses a portion of the

"membership" as payment for goods that it provides its members:

> Contributions, gifts or membership dues made or paid to the National Rifle Association of America are not refundable or transferable and are not deductible as charitable contributions for Federal income tax purposes. $3.75 of the membership dues are designated for magazine subscription. Overseas addresses will be subject to additional postage charges. There will be an annual fee of $5 per year for Canada and $10 per year for all other countries.

22.    The NRA's memberships come with certain benefits—including

a free gift and subscription to the NRA's publications[3]:



---

[3] *Id.*



23.    In making calls soliciting memberships for the NRA, Defendants and their agents utilized an ATDS. The ATDS hardware and software used by Defendants (or their agents) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

24.    In making these calls, Defendants contact those with whom they do not have a prior relationship—let alone consent to make the call.

25.    InfoCision admits that it uses vendors to collect phone numbers for individuals who have had no previous contact with it or the NRA. In response to an individual who complained to the Better Business Bureau that InfoCision called him on behalf of the NRA—even though he had never been a member of  the NRA—InfoCision explained: "Prior to a telemarketing

campaign, if phone numbers are unavailable from a client, InfoCision Management Corporation may use outside phone look up vendors to obtain phone numbers of current, past, or prospective members of the organization to contact them by phone."[4] As to that particular individual, it said, "[t]he phone number InfoCision Management Corporation called was not provided by the National Rifle Association."[5]

26.    Defendants knowingly made (and continue to make) unsolicited autodialed and pre-recorded calls and knowingly continued to make those calls after members of the Classes requested that they stop. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the Classes, but also intentionally and repeatedly violated the TCPA.

27.    Before November 2019, the NRA knew or should have known that InfoCision made and is continuing to make unsolicited autodialed and pre-recorded calls on the NRA's behalf, but the NRA has failed to take effective steps to prevent InfoCision from making those unlawful calls.

---

[4] https://www.bbb.org/us/oh/akron/profile/marketing-programs/infocision-management-corporation-0272-7034/complaints (last visited March 19, 2020).

[5] *Id.*

## B. Defendants repeatedly made unsolicited phone calls to Plaintiff in violation of the TCPA.

28.     Plaintiff registered his cell phone number with the National Do Not Call Registry in 2003 for the express purpose of avoiding unsolicited telemarketing calls.

29.     Plaintiff had a membership with the NRA, but his membership expired in about late 2018, and he did not renew it. At no time did he consent to receive phone calls from the NRA.

30.     After his membership with the NRA expired, Plaintiff received multiple calls every week for several months from Defendants asking him to rejoin the NRA. He answered at least one of the calls and responded that he was not interested in an NRA membership and that he wanted the NRA to leave him alone and stop calling, but the calls continued.

31.     Finally, in about November 2018, frustrated with the annoyingly persistent calls, Plaintiff again answered one of the calls and renewed his request that Defendants stop calling him. During this call, he first became aware of  a "do not call list" for the NRA and he immediately requested that he be placed on that "do not call list." For about a year, the calls stopped.

32.     Then, in about November 2019, the harassing calls began again. Plaintiff began receiving phone calls several times per week from Defendants aimed at getting Plaintiff to buy a membership in the NRA.

33.     Beginning in about November 2019, Plaintiff received more than 16 unwanted calls from Defendants.

34.     For the first few weeks he received them, Plaintiff ignored these calls. They would typically come in the middle of the day when Plaintiff was at work, and he did not answer.

35.     On about March 6, 2020, after months of receiving this barrage of unsolicited calls, Plaintiff decided to pick up and answer a call. After he answered the phone, there was an abnormally long pause, with nothing but dead air on the line. Then, Plaintiff heard what he believes was a pre-recorded voice say something about InfoCision.

36.     Plaintiff was then transferred to a live person, who told him she was calling on behalf of the NRA and tried to persuade him to buy an NRA membership. Specifically, she pushed Plaintiff to buy the $150 NRA membership package, which included a sweatshirt (about a $70 value) and a magazine subscription.

37.     Plaintiff responded that he was not interested in purchasing anything.

11

38.    Then, Plaintiff asked the representative for the NRA's contact information and the contact information for the entity that had placed the automated call. She identified InfoCision as the entity that had placed the call, and she provided contact information for the NRA and InfoCision.

39.    After the representative gave Plaintiff the contact information, she stated that he could not sue them because the NRA "is a nonprofit."

40.    Plaintiff complained to the representative that he had previously asked them not to call him but he was still receiving unsolicited calls, and he asked again to be placed on Defendants' "do not call list."

41.    Defendants' conduct in placing these calls to Plaintiff violated the TCPA.

42.    Defendants willfully and knowingly violated the TCPA and the applicable regulations.

## V.    Class Action Allegations

43.    Plaintiff brings this action individually and on behalf of all other persons similarly situated ("Class Members").

44.    Under Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this action as a class action on behalf of the Classes of persons defined as:

### National ATDS Class

All persons within the United States who received a non-emergency telephone call from Defendants through the use of an automatic telephone dialing system and/or prerecorded voice, and who did not provide prior express consent for such calls, at any time from _____, 2016 to the date of trial.

### National Do-Not-Call Subclass

All persons within the United States who were on the National Do-Not-Call Registry and received more than one solicitation telephone call from Defendants within any 12 month period from _____, 2016 to the date of trial.

45.     Excluded from the Classes are Defendants and any entities in which they have a controlling interest, Defendants' agents and employees, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

46.     **Numerosity**. The Classes are so numerous that joinder of all members is impracticable. Upon information and belief, the Classes have thousands of members. Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

47.     **Commonality**. There are numerous questions of law and fact common to Plaintiff and the members of the Classes. These common questions of law and fact include, but are not limited to, the following:

a. Whether Defendants utilized an automatic telephone dialing system to place non-emergency calls to members of the Classes;

b. Whether Defendants can meet their burden of showing they obtained prior express consent to make such calls;

c. Whether Defendants' conduct in making these calls was willful or knowing or both;

d. Whether members of the Classes are entitled to statutory damages; and

e. Whether Defendants should be enjoined from making such calls in the future.

48.     **Typicality**. Plaintiff's claims are typical of the claims of the Classes. Plaintiff's claims, like the claims of the Classes, arise out of the same common course of conduct by Defendants. Specifically, as a person who received non-emergency telephone calls from Defendants using an automatic telephone dialing system, without his prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such phone calls.

49.     **Adequacy**. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable

attorneys who are experienced trial lawyers with significant experience in complex and class action litigation, including consumer class actions and robocall class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel has interests that are contrary to or that conflict with those of the proposed Classes.

50.     **Predominance**. Defendants have engaged in a common course of conduct toward Plaintiff and the Classes. The common issues arising from this conduct that affect Plaintiff and the Classes predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

51.     **Superiority**. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interest of individual Class members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for violation of the TCPA are too small to make it practical to prosecute an individual action. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a

forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

## VI.    Claims for Relief

### A. First Claim for Relief
**Strict Liability Violations of the Telephone Consumer Protection Act**
**47 U.S.C. § 227(b)**
*On Behalf of the National ATDS Class*

52.    Plaintiff realleges all allegations set forth above.

53.    Through their alleged conduct, Defendants have violated 47 U.S.C. § 227(b)(1) by using an (1) ATDS or (2) an artificial or prerecorded voice or (3) both to make calls to telephone numbers assigned to a cellular telephone service in the United States.

54.    Through their alleged conduct, Defendants have also violated 47 U.S.C. § 227(b)(1) by initiating telephone calls to residential telephone lines using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party.

55.    As a result of Defendants' violations of 47 U.S.C. § 227, Plaintiff and each of the National ATDS Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute under 47 U.S.C. § 227(b)(3)(B).

56.     Plaintiff and National ATDS Class members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

57.     Plaintiff and National ATDS Class members are also entitled to an award of attorneys' fees and costs.

### B. Second Claim for Relief
### Willful and Knowing Violations of the TCPA
### 47 U.S.C. § 227(b)
### *On Behalf of the National ATDS Class*

58.     Plaintiff realleges all allegations set forth above.

59.     Defendants willfully or knowingly (or both willfully and knowingly) violated § 227(b) of the TCPA or the applicable regulations prescribed under this subsection. The alleged acts and omissions of Defendants constitute numerous and multiple willful or knowing (or both) violations of § 227(b) of the TCPA.

60.     As a result of Defendants' willful or knowing (or both) violations of 47 U.S.C. § 227(b), Plaintiff and each of the National ATDS Class members are requesting an award of $1,500 in statutory damages under 47 U.S.C. § 227(b)(3)(C) for every call in violation of 47 U.S.C. § 227(b) and the applicable regulations.

61.     Plaintiff and National ATDS Class members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of 47 U.S.C. § 227(b) in the future.

62.     Plaintiff and National ATDS Class members are also entitled to an award of attorneys' fees and costs.

### C. Third Claim for Relief
**Violations of the TCPA, 47 U.S.C. § 227(c) & 47 C.F.R. 64.1200(c), (e)**
*On Behalf of the National Do-Not-Call Subclass*

63.     Plaintiff realleges all allegations set forth above.

64.     Defendants made telephone calls to Plaintiff and other consumers whose numbers were listed on the National Do-Not-Call Registry.

65.     Plaintiff and members of the National Do-Not-Call Subclass received at least two calls from Defendants within a 12-month period.

66.     As a result of Defendants' violations of 47 U.S.C. § 227(c) and the regulations prescribed under this subsection, including but not limited to 47 C.F.R. 64.1200(c) and (e), Plaintiff and members of the National Do-Not-Call Subclass are each entitled to $500 for each and every telephone call in violation of § 227(c) of the TCPA and the regulations prescribed under this subsection, including but not limited to 47 C.F.R. 64.1200(c), (e).

### D. Fourth Claim for Relief
### Willful and Knowing Violations of the TCPA, 47 U.S.C. § 227(c) &
### 47 C.F.R. 64.1200(c), (e)
### *On Behalf of the National Do-Not-Call Subclass*

67.    Plaintiff realleges all allegations set forth above.

68.    Defendants willfully or knowingly (or both willfully and knowingly) violated 47 U.S.C. § 227(c) and the regulations prescribed under this subsection, including but not limited to 47 C.F.R. 64.1200(c), (e). The alleged acts and omissions of Defendants constitute numerous and multiple willful or knowing (or both) violations of 47 U.S.C. § 227(c) and the regulations prescribed under this subsection, including but not limited to 47 C.F.R. 64.1200(c), (e).

69.    As a result of Defendants' willful or knowing (or both) violations of 47 U.S.C. § 227(c), Plaintiff and each of the National ATDS Class members are requesting an award of $1,500 in statutory damages under 47 U.S.C. § 227(c)(5)(C) for each and every call in violation of 47 U.S.C. § 227(c) and the regulations prescribed under that subsection, including but not limited to 47 C.F.R. 64.1200(c), (e).

70.    Plaintiff and National ATDS Class members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

71.    Plaintiff and National ATDS Class members are also entitled to an award of attorneys' fees and costs.

## Prayer for Relief

Plaintiff, on his own behalf and on the behalf of the Classes, prays for judgment against Defendants as follows:

A.    Certification of the proposed Classes;

B.    Appoint Plaintiff as representative of the Classes;

C.    Appoint the undersigned counsel as counsel for the Classes;

D.    Award Plaintiff and the Classes statutory, compensatory, and exemplary damages, as allowed by law;

E.    Award Plaintiff and the Classes attorneys' fees and costs, as allowed by law and/or equity;

F.    Enjoin Defendants from making unsolicited telemarketing calls, and otherwise protecting the interests of the Classes;

G.    Grant Plaintiff leave to conform to the evidence produced at trial; and

H.    Grant such other and further relief as the Court deems appropriate.

Date: May 5, 2020     Respectfully submitted,


/s/ David G. Webbert
David G. Webbert
Jeffrey Neil Young
Shelby Leighton
Johnson, Webbert & Young, LLP
160 Capitol Street, P.O. Box 79
Augusta, Maine 04332-0079
Telephone: 207.623.5110
Email: dwebbert@work.law
Email: jyoung@work.law
Email: sleighton@work.law


/s/ Kim D. Stephens
Kim D. Stephens, WSBA #11984
Jason T. Dennett, WSBA #30686
Kaleigh N. Powell, WSBA #52684
Tousley Brain Stephens PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
Telephone: 206.682.5600
Email: kstephens@tousley.com
Email: jdennett@tousley.com
Email: kpowell@tousley.com

*Attorneys for Plaintiff and the Putative Class*