# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

| | |
|---|---|
| Travis McEwen, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>National Rifle Association of America and InfoCision, Inc.,<br><br>    Defendants. | Case No. 2:20-cv-00153-LEW |

**MOTION TO DISMISS COUNTS 3 AND 4, TO STAY COUNTS 1 AND 2, AND INCORPORATED MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

LAW & ARGUMENT ........................................................................................................... 2

I.   The Court Should Dismiss Counts 3 and 4. ............................................................. 2

     A.   Standard of review. ........................................................................................ 2

     B.   The Do Not Call Registry ban does not apply to calls made on behalf
          of a tax-exempt nonprofit organization like the NRA. ................................ 3

II.  The Court Should Stay Counts 1 and 2 Pending the Supreme Court's
     Ruling in *Facebook v. Duguid*. ................................................................................ 5

     A.   Standard of review. ........................................................................................ 5

     B.   The Supreme Court is set to resolve a dispositive issue for this case:
          What is an ATDS? ......................................................................................... 5

     C.   A stay would benefit both parties and the Court. ........................................ 8

CONCLUSION .................................................................................................................... 11

## INTRODUCTION

Travis McEwen was a National Rifle Association member. After McEwen's membership lapsed, the NRA reached out to him, using professional telemarketer InfoCision, to see if he would renew his membership. He did not.

Instead, McEwen sued the NRA and InfoCision under the Telephone Consumer Protection Act, known as the TCPA. McEwen's cell phone number is registered with the National Do Not Call Registry. (Compl. ¶ 28.) He argues that this should have barred InfoCision and the NRA from calling that number. (*Id.* ¶¶ 63-71.) McEwen also believes that InfoCision used an "automatic telephone dialing system," or "ATDS," to call him because there was an "abnormally long pause" on the line after he picked up. (*Id.*)

McEwen's do-not-call theory, brought in Counts 3 and 4, fails as a matter of law, and those claims should be dismissed. The ban on calling numbers listed on the National Do Not Call Registry does not apply to calls made on behalf of tax-exempt nonprofit organizations. The NRA is a 501(c)(4) tax-exempt nonprofit organization.

The Court should then stay the remainder of the case because a dispositive issue on Counts 1 and 2 is currently pending before the Supreme Court. On July 9, 2020, the Supreme Court granted review in *Facebook v. Duguid*, No. 19-511 to consider "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *Facebook v. Duguid*, No. 19-511, Dkt. No. 1, p. ii.

The circuits are split on this question, although the First Circuit has not yet weighed in. The Third, Seventh and Eleventh Circuits have held that the software used must randomly or sequentially generate the phone number that is dialed, not just automatically dial it from a list of known phone numbers. If the Supreme Court agrees,

then McEwen's claim will fail. None of InfoCision's systems do this, and McEwen's allegations do not suggest otherwise. Either way, the *Facebook* decision will guide discovery and briefing throughout the case.

Expending resources litigating this issue in the meantime would be a waste, both for the parties and the Court. The challenges faced by all at the moment amplify this concern.

For these reasons, Defendants request that the Court dismiss Counts 3 and 4 and then stay the case pending the Supreme Court's decision in *Facebook v. Duguid*.[1]

## LAW & ARGUMENT

I. **The Court Should Dismiss Counts 3 and 4.**

    A. **Standard of review.**

Defendants move to dismiss Counts 3 and 4 under Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mehta v. Ocular Therapeutix, Inc.*, 955 F.3d 194, 205 (1st Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making that decision, the Court ignores legal conclusions, as well as allegations "so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595 (1st Cir. 2011) (citing *Twombly*, 550 U.S. at 557 n.5).

The Court may also consider "official public records and documents sufficiently referred to in the complaint." *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 66 (1st Cir. 2020) (quotation omitted). "When such documents contradict an allegation in the complaint,

---

[1] Defendants conferred with McEwen's counsel regarding a stay. McEwen's counsel has not yet indicated whether McEwen plans to oppose this request.

2

the document trumps the allegation." *Nahass v. Harrison*, 207 F. Supp. 3d 96, 100 (D. Mass. 2016) (citing *Clorox Co. P.R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000)).  As part of the Rule 12 record, Defendants attach the NRA's most recent tax filing, downloaded from the IRS's website, as Exhibit A, and a screenshot of the New York Secretary of State's database of information on New York businesses, as Exhibit B.  These documents are public records of which the Court may take judicial notice for the limited fact that the NRA is a 501(c)(4) tax-exempt, nonprofit organization.

Under Federal Rule of Evidence 201, "at any stage of the proceeding" the Court may take judicial notice of a fact that is "not subject to reasonable dispute" because it is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b), (d).  "Courts regularly take notice of publicly available documents including, for example, public disclosures required to be filed with the SEC, . . ., documents retrieved from official government websites, . . ., and documents evidencing federal enrollments and licenses[.]" *Fernandez v. Zoni Lang. Ctrs., Inc.*, 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016), *aff'd*, 858 F.3d 45 (2d Cir. 2017).  *See also Africare, Inc. v. Xerox Complete Doc. Sols. Md., LLC*, 436 F. Supp. 3d 17, 44 n.21 (D.D.C. 2020) (taking judicial notice of IRS Form 990); *Tate v. HUD Washington DC (Entity)*, 2020 WL 2085261, at *6 (W.D. Pa. Apr. 30, 2020) (taking judicial notice "that [organization] is a private not-for-profit organization" based on public information).

**B.     The Do Not Call Registry ban does not apply to calls made on behalf of a tax-exempt nonprofit organization like the NRA.**

Counts 3 and 4 allege that InfoCision and the NRA violated the ban on calling phone numbers listed on the National Do Not Call Registry.  (Compl. ¶¶ 64, 66, 68.)

The ban on calling "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry" only applies to "any telephone solicitation."  47 C.F.R. § 64.1200(c)(2).  The "term telephone solicitation . . . does not include a call or message . . . [b]y or on behalf of a tax-exempt nonprofit organization."  47 C.F.R. § 64.1200(f)(14).  *See also In Re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14040 & 14044 (2003) ("we also decline to extend the national do-not-call requirements to tax-exempt nonprofit organizations or entities that telemarket on behalf of nonprofit organizations").

McEwen admits that the phone calls he received "from InfoCision" were made "on behalf of the NRA asking him to join the organization."  (Compl. ¶ 3; *see also, e.g.*, *id.* ¶¶ 17, 18.)  Though McEwen does not plead the NRA's tax status, public records show that the NRA is a 501(c)(4) entity organized as a New York "DOMESTIC NOT-FOR-PROFIT CORPORATION."  (*See* Exhibits B & C.)  Under the Internal Revenue Code, a 501(c)(4) entity is a tax-exempt nonprofit organization.  26 U.S.C. § 501(a) & (c)(4); *see also Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 544 (1983) (explaining the difference between 501(c)(4) and 501(c)(3) organizations).

McEwen distinguishes the National Rifle Association of America from the NRA Foundation, which is a 501(c)(3) charitable organization.  (Compl. ¶¶ 19-22.)  This is irrelevant.  The TCPA regulation encompasses all tax-exempt nonprofit organizations, not just 501(c)(3) charities.  47 C.F.R. § 64.1200(f)(14) (using term "tax-exempt nonprofit organization"); *see also See Fitzhenry v. Indep. Order of Foresters*, 2015 WL 3711287, at *2 (D.S.C. June 15, 2015) (calls on behalf of a 501(c)(8) fraternal benefit association were on behalf of a tax-exempt nonprofit for purposes of the TCPA).

Counts 3 and 4 should be dismissed with prejudice because McEwen's complaint alleges that he was called on behalf of a tax-exempt nonprofit organization.

## II. The Court Should Stay Counts 1 and 2 Pending the Supreme Court's Ruling in *Facebook v. Duguid*.

### A. Standard of review.

The Court "possess[es] the inherent power to stay proceedings for prudential reasons." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004). "Generally, in evaluating whether to issue a stay, a court will consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party without a stay; and, (3) judicial economy." *Good v. Altria Grp., Inc.*, 624 F. Supp. 2d 132, 134 (D. Me. 2009); *see also City of Portland v. Purdue Pharma, LP*, 2018 WL 6191127, at *4 (D. Me. Nov. 28, 2018) (same).

### B. The Supreme Court is set to resolve a dispositive issue for this case: What is an ATDS?

McEwen alleges that InfoCision's calls to him on behalf of the NRA violated 47 U.S.C. § 227(b). (Compl. ¶¶ 52-62.) Absent consent, a telemarketer may not call a cell phone "using any automatic telephone dialing system." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity -- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

The Federal Communications Commission previously interpreted this definition expansively. So expansively that the FCC's interpretation had "the apparent effect of embracing any and all smartphones," a view the D.C. Circuit found untenable in *ACA International v. Federal Communications Commission*, 885 F.3d 687, 696 (D.C. Cir. 2018). After *ACA International*, courts around the country have been tasked with

interpreting "the statute's text as though for the first time." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020).

The "question is what to do with the clause: 'using a random or sequential number generator.'" *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306 (11th Cir. 2020). If it modifies both "store" and "produce," then only equipment that is "capable of performing at least one of those functions using a random or sequential number generator" would qualify as an "automatic telephone dialing system." *Gadelhak*, 950 F.3d at 463. The Seventh, Third, and Eleventh Circuits have adopted this interpretation. *See id.* at 468; *Glasser*, 948 F.3d at 1306; *Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018).

Under this view, "to qualify as an auto-dialer, the system must be able to randomly or sequentially generate numbers." *DeCapua v. Metro. Prop. & Cas. Ins. Co.*, 2020 WL 1303248, at *2 (D.R.I. Mar. 19, 2020); *see also Suttles v. Facebook, Inc.*, 2020 WL 2763383, at *5 (W.D. Tex. May 20, 2020) ("a device must randomly or sequentially generate—not just store—numbers to be considered an ATDS under the Act").

The Ninth, Sixth, and Second Circuits disagree. In these circuits, "an ATDS need not be able to use a random or sequential generator to store numbers—it suffices to merely have the capacity to 'store numbers to be called' and 'to dial such numbers automatically.'" *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019), *cert. granted in part*, No. 19-511, 2020 WL 3865252 (U.S. July 9, 2020). *See also Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 287 (2d Cir. 2020); *Allan v. Pa. Higher Educ. Assist. Agency*, 2020 WL 4345341, at *9 (6th Cir. July 29, 2020).

The First Circuit has not weighed in.² But, more importantly, the Supreme Court is set to resolve this split when it reviews the Ninth Circuit's position during the upcoming October 2020 term. On July 9, 2020, the Court granted review of the question: "Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *Facebook v. Duguid*, Supreme Ct. No. 19-511, Dkt. No. 1 (Petition), p. ii; 2020 WL 3865252 (U.S. July 9, 2020).

If the Supreme Court answers this question no, then McEwen's claim will fail. InfoCision calls known telephone numbers from lists and does not randomly or sequentially generate phone numbers to call. (Ex. C, Brooks Dec. ¶ 8.) This includes the calls made to McEwen, whose complaint does not claim that InfoCision and the NRA randomly generated the number when InfoCision called him. After all, McEwen was an NRA member and InfoCision targeted the calls specifically to him as a prior member. (Compl. ¶¶ 28-40.) *See Suttles*, 2020 WL 2763383, at *6 (granting motion to dismiss because the facts suggested defendant "directly targeted specific individuals," which was inconsistent with the use of a random or sequential number generator).

McEwen also suggests in his complaint that when he picked up the phone on March 6, 2020, he "heard what he believes was a prerecord voice say something about InfoCision," after which he was "transferred to a live person, who told him she was calling on behalf of the NRA[.]" (Compl. ¶ 35-36.) The TCPA also contains restrictions on using a prerecorded voice to call cell phones. *See* 47 U.S.C. § 227(b)(1)(A). But this issue will not be a focus of the case because McEwen's belief is demonstrably false.

---

² *DeCapua* is currently on appeal and appellees brief is due on August 7, 2020. *DeCapua v. Metro. Prop. & Cas. Ins. Co.*, First Cir. No. 20-1454.

InfoCision gathered the records for the March 6, 2020 phone call, and those records show that no prerecorded voice was used. (Ex. C, Brooks Dec. ¶¶ 3-7.)[3]

So the ATDS definitional question that is pending before the Supreme Court is a central and potentially dispositive issue in this case. For the reasons explained below, the prudential factors that courts apply in this circuit support a stay.

### C. A stay would benefit both parties and the Court.

Courts frequently stay proceedings pending a decision of another tribunal that will affect a dispositive issue in the case. *See, e.g.*, *Cardoso v. City of Brockton*, 2012 WL 992096, at *1 (D. Mass. Mar. 23, 2012) (staying case pending Supreme Court's decision on central issue in case); *Bennett v. Fid. Mgmt. & Research Co.*, 2009 WL 10728769, at *1 (D. Mass. Aug. 11, 2009) (same); *Emseal Joint Sys., Ltd. v. Schul Int'l Co., LLC*, 2015 WL 1457630, at *4 (D.N.H. Mar. 27, 2015) (granting stay pending review by United States Patent and Trademark Office"); *Bos. Heart Diagnostics Corp. v. Health Diagnostics Lab., Inc.*, 2014 WL 2048436, at *4 (D. Mass. May 16, 2014) (same).

These decisions are rooted in the efficiency associated with knowing the rules that will govern the case, which benefits both the parties and the Court. *Emseal Joint Sys.*, 2015 WL 1457630, at *4 (stay because USPTO decision "will likely simplify the issues in question and streamline trial of the case, thereby employing the limited resources of both the parties and the court in a more efficient manner"); *Bennett*, 2009 WL 10728769, at *1 (stay because "[t]he standard the Supreme Court chooses may affect the ultimate disposition of the case" and "[w]aiting for an authoritative decision concerning the relevant standard will promote a proper decision and will prevent the possibility of expensive relitigation of issues").

---

[3] Defendants informed McEwen's counsel of this fact.

These principles apply here. The case is in it early stages, so the parties have yet to expend significant recourses. *See Bos. Heart Diagnostics Corp.*, 2014 WL 2048436, at *4 ("the fact that this case is at a very early stage is a factor that weighs in favor of a stay"). Staying the case pending the Supreme Court's decision will save significant resources for both parties. Whatever standard the Supreme Court sets, it will allow the parties to focus their limited resources on the relevant issues.

But if the case proceeds to discovery now, there is a significant risk that the Court and the parties "dedicate[e] substantial resources to proceedings that may ultimately prove unnecessary." *Larson v. Trans Union, LLC*, 2015 WL 3945052, at *8 (N.D. Cal. June 26, 2015) (staying case pending Supreme Court decision). As one district court noted in staying TCPA litigation under similar circumstances, "[i]n the absence of a stay, the parties will have to expend time and money conducting discovery on an issue central to Defendant's liability while lacking a clear idea of the law that will ultimately apply at summary judgment or at trial." *Ambrezewicz v. LeadPoint, Inc.*, 2017 WL 8185862, at *4 (C.D. Cal. May 8, 2017).

The Supreme Court's decision not only may clarify the issues for discovery regarding the ATDS issue. It may *resolve* Counts 1 and 2. As noted, InfoCision's systems do not randomly generate phone numbers to call, a point McEwen does not seem to dispute. (Brooks Dec. ¶ 8; Compl. ¶ 25.) If the Supreme Court holds that automatically dialing known phone numbers is insufficient, that would obviate the need for protracted discovery into other issues, such as whether McEwen consented to the phone calls (which he did) and whether the case may proceed on a class basis.

In addition to discovery, the parties will have to brief the complicated statutory interpretation issue that has divided courts across the country, whether as part of a Rule

9

12(c) or Rule 56 motion or because the parties dispute the standard that should apply to guide relevancy determinations in discovery. However it is raised, the Court will then have to spend its limited recourses analyzing and deciding the issue, a decision that may be quickly upended by the Supreme Court.

McEwen will not be prejudiced by a stay. Delay is inherent in every stay and is not enough on its own to find undue prejudice. *See Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp.*, 2016 WL 1735330, at *4 (D. Mass. Apr. 28, 2016) ("while a stay always presents a risk of delaying final resolution of a dispute, the mere potential for delay, however, is insufficient to establish *undue* prejudice") (emphasis in original, quotation omitted); *In re Body Sci. LLC Patent Litig.*, 2012 WL 5449667, at *4 (D. Mass. Nov. 2, 2012) ("Mere delay, without more, does not constitute undue prejudice."). The Supreme Court will likely issue a decision within a year, which is not such a long time to affect the evidence available. *See Larson*, 2015 WL 3945052, at *8 (finding that it was implausible that a one-year stay would affect the plaintiff's ability to locate evidence).

In short, the balance of the equities favors a stay. Absent a stay, InfoCision and the NRA will have to expend significant resources defending wide-ranging class and merits discovery that may be irrelevant when the Supreme Court decides *Facebook v. Duguid*. On the other hand, McEwen will not suffer any undue prejudice. To the contrary, McEwen will likely save legal expenses and his own time responding to discovery about issues that may be mooted by the Supreme Court's ruling. And there is no reason for the Court to spend significant time and effort deciding a question that will be resolved by the Supreme Court this upcoming term.

## CONCLUSION

Counts 3 and 4 should be dismissed with prejudice. After dismissing those two counts, the Court should stay the remainder of the case pending the Supreme Court's decision in *Facebook v. Duguid*, No. 19-511.

Dated: August 3, 2020                    Respectfully submitted,

/s/ Patrick Strawbridge
Patrick Strawbridge
Maine Bar No. 10024
Consovoy McCarthy PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(617) 227-0548
patrick@consovoymccarthy.com

Terry M. Brennan (*pro hac vice* pending)
Sam A. Camardo (*pro hac vice* pending)
Daniel M. Kavouras (*pro hac vice* pending)
BakerHostetler LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
T (216) 861-7145
F (216) 696-0740
tbrennan@bakerlaw.com
scamardo@bakerlaw.com
dkavouras@bakerlaw.com