**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| Travis McEwen, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) ) v. ) ) National Rifle Association of America ) and InfoCision, Inc., ) ) Defendants. ) | Case No. 2:20-cv-00153-LEW |

**MOTION FOR JUDGMENT ON THE PLEADINGS AND TO LIFT STAY AS TO
NRA, AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

ARGUMENT .................................................................................................................... 2

    I.    Standard of Review ................................................................................... 2

    II.    McEwen's ATDS theory should be dismissed under *Facebook*. ............................ 2

        A.    McEwen alleges no facts suggesting that InfoCision used an ATDS to call him. ........................................................................................... 2

        B.    McEwen is not entitled to discovery to plead his claim. .............................. 4

            1.    The First Circuit requires a plaintiff to plead facts before getting discovery. ............................................................................ 5

            2.    Under *Facebook*, a plaintiff must be called with a system using a random or sequential number generator. ............................ 7

    III.    McEwen's artificial or prerecorded voice theory also fails. ..................................... 9

CONCLUSION ............................................................................................................... 10

**INTRODUCTION**

Plaintiff Travis McEwen was a member of the NRA. After McEwen's membership lapsed, the NRA contacted him, using professional telemarketer InfoCision, to see if he would renew his membership. McEwen declined, and instead sued the NRA and InfoCision under the Telephone Consumer Protection Act (the "TCPA").

This past April, this Court dismissed most of McEwen's claims, leaving intact only Counts A and B. (*See* Dkt. No. 54 (dismissing Counts C, D, E, and F of McEwen's First Amended Complaint).) Counts C through F, which involved other purported TCPA violations, were dismissed only as to InfoCision in light of the stay occasioned by the NRA's bankruptcy filing. Because the bankruptcy has concluded, the NRA respectfully moves the Court to lift the stay and: (1) grant its pending motion to dismiss Counts C through F (*see* Dkt. No. 31) for the same reason that the Court dismissed those counts as to InfoCision (*see* Dkt. No. 54, pp. 10-12, 16); and (2) decide this motion for judgment on the pleadings as to Counts A and B on behalf of both defendants.

In Count A, McEwen claims that InfoCision and the NRA violated the TCPA, specifically Section 227(b)(1), by "using an ATDS [an automatic telephone dialing system] to make calls" or by "initiating telephone calls . . . using an artificial or prerecorded voice." (Dkt. No. 24 ¶¶ 68-69 ("First Am. Compl.").) In Count B, McEwen makes the same claim but adds that the alleged TCPA violations were done "willfully or knowingly." (*Id.* ¶¶ 73-75.)

Counts A and B should both be dismissed. McEwen pleads no facts to support his claim that InfoCision used an ATDS. In particular, he does not offer a single fact about InfoCision's alleged use of a random or sequential number generator to call him. Under the Supreme Court's recent decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021),

1

this omission is fatal to his ATDS theory. McEwen also offers no facts showing that InfoCision called him using an artificial or prerecorded voice, and his own complaint alleges that InfoCision used a live person to communicate with him. Defendants thus move the Court for judgment in their favor on Counts A and B under Rule 12(c).

## ARGUMENT

### I. Standard of Review

Under Rule 12(c), "a party may move for judgment on the pleadings" once "the pleadings are closed." Fed. R. Civ. P. 12(c). InfoCision and the NRA both answered McEwen's amended complaint (Dkt. Nos. 29, 30), thus Rule 12(c) is the proper vehicle to dispose of McEwen's claims. (*See* Dkt. No. 68 n.1.) Courts treat Rule 12(c) motions "like a Rule 12(b)(6) motion to dismiss." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008); *see also Collins v. Maine Prison Warden*, 2019 WL 1431223, at *1 (D. Me. Mar. 29, 2019) (same). Therefore, "[t]o survive a 12(c) motion," a "complaint must contain sufficient factual matter, accepted as true, plausibly to give rise to an entitlement to relief." *Collins*, 2019 WL 1431223, at *1 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]" are insufficient. *Id.* (quoting *Iqbal*, 556 U.S. at 678).

### II. McEwen's ATDS theory should be dismissed under *Facebook*.

#### A. McEwen alleges no facts suggesting that InfoCision used an ATDS to call him.

McEwen's first basis for Counts A and B is InfoCision's alleged use of an automatic telephone dialing system,[1] known as an ATDS. (First Am. Compl. ¶¶ 68-69.)

---

[1] McEwen alleges that InfoCision made the calls, so the NRA's liability could only be through this conduct. Because McEwen fails to allege a TCPA claim based on that conduct, McEwen's claims against the NRA and InfoCision fail for the same reasons.

2

Until recently, the pleading requirements for an ATDS-based claim were subject to dispute, but the Supreme Court's decision in *Facebook* settled the matter.  Now, to adequately allege this claim, a plaintiff is "require[ed]" to allege "that [a caller] used a random or sequential number generator to place a call to Plaintiff's cellphone[.]" *McEwen v. Nat'l Rifle Ass'n of Am.*, 2021 WL 1414273, at *7 (D. Me. Apr. 14, 2021) (citing *Facebook*); *see also Facebook*, 141 S. Ct. at 1170 ("Congress' definition of an [ATDS] requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator.").

In other words, to avoid dismissal, McEwen must allege facts showing that he was called because the caller used a random or sequential number generator to produce his number.  Without those factual allegations, an ATDS claim does not exist.  *See, e.g., Barry v. Ally Financial, Inc.,* 2021 WL 2936636, at *3 (E.D. Mich. July 13, 2021) ("Because Plaintiff has not and cannot allege that Defendant used a random or sequential number generator to store or produce, and then dial, her number, she fails to state a claim under the TCPA."); *Watts v. Emergency Twenty Four, Inc.*, 2021 WL 2529613, at *3 (N.D. Ill. June 21, 2021) (dismissing TCPA claim because the "Complaint does not allege that EMERgency24 randomly generated his number to call.").

McEwen's claim fails under *Facebook*.  He does not include any factual allegations that InfoCision called him using a random or sequential number generator. *See McEwen,* 2021 WL 1414273, at *7 (explaining that McEwen's "allegations do not state that InfoCision used a random or sequential number generator to place its calls"). Instead, McEwen merely states that InfoCision's dialing software "had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers."  (First Am. Compl. ¶ 43.)  This allegation is a

3

threadbare recital of the elements of the TCPA and does not suffice to state a plausible claim. *Iqbal*, 556 U.S. at 678–79.

Moreover, McEwen's own allegations show that InfoCision did not randomly or sequentially generate or select his number. McEwen was an NRA member and InfoCision specifically dialed his number on the NRA's behalf to inquire about an NRA membership renewal. (First Am. Compl. ¶¶ 28, 39-42.) Where a targeted call is made to a specific individual, the only plausible inference is that a random or sequential number generator was *not* used. *See, e.g.*, *Suttles v. Facebook, Inc.*, 461 F. Supp. 3d 479, 487 (W.D. Tex. 2020) ("Suttles has pleaded the opposite of random or sequential dialing by alleging that he received targeted messages directed to him"); *Hufnus v. DoNotPay, Inc.*, 2021 WL 2585488, at *1 (N.D. Cal. June 24, 2021) (dismissing ATDS-based claim "because DoNotPay's system targets phone numbers that were obtained in a non-random way (specifically, from consumers who provided them)"); *Barry*, 2021 WL 2936636, at *5 (dismissing claim because "calls were targeted at specific individuals" and thus not "random").

Because McEwen fails to adequately allege that InfoCision used an ATDS to call him, the Court should enter judgment in Defendants' favor on Counts A and B.[2]

### B. McEwen is not entitled to discovery to plead his claim.

Past briefing indicates that McEwen will argue that he needs discovery to plead his ATDS claim. Specifically, McEwen will argue that he needs discovery to determine whether InfoCision's system had the "capacity" to use a random or sequential number

---

[2] Count A and B rise and fall together. *See, e.g.*, *Winters v. Quicken Loans Inc.*, 2020 WL 5292002, at *4 (D. Ariz. Sept. 4, 2020) (dismissing a "knowing and/or willful" TCPA claim because it "necessarily fails for the [same] reasons" as underlying claim).

4

generator or whether InfoCision "stores" numbers and then "picks" those numbers "from a preproduced list" using a random or sequential number generator. The Court should reject McEwen's discovery request for two reasons.

### 1. The First Circuit requires a plaintiff to plead facts before getting discovery.

Under black-letter law, a plaintiff must plead a viable claim before he or she is entitled to discovery. *Iqbal*, 556 U.S. at 685–86 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."). The First Circuit has made this clear time and again. *See Parker v. Landry*, 935 F.3d 9, 18–19 (1st Cir. 2019) (A "plaintiff must state a plausible claim before she can invoke a right to discovery."); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) ("[A] claim must have some degree of plausibility before the parties are put through their discovery paces[.]"); *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 8 (1st Cir. 2011) (A "plaintiff whose complaint does not state an actionable claim has no license to embark on a fishing expedition in an effort to discover a cause of action."); *DM Res., Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999) ("[T]he price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings.") (emphasis in original).

As explained below, McEwen will likely misconstrue what is now required to plead a viable ATDS claim under *Facebook*. But even giving him the benefit of his flawed reading of *Facebook*, there are no facts in his complaint supporting the idea that InfoCision used a system that could create numbers using a random or sequential number generator or use a random or sequential number generator to produce a list of numbers. The phrase "random or sequential number generator" comes up only twice in

his entire complaint—in footnote one, quoting the statute, and in paragraph 43, paraphrasing the statute.

This is not a situation where the plaintiff alleges facts giving rise to a plausible claim but where there is a "missing link" that discovery would have to fill to "allow the [plaintiff] to go to trial on her claim." *Garcia-Catalan v. United States*, 734 F.3d 100, 105 (1st Cir. 2013); *see also Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (same). In other words, the plaintiffs in *Garcia-Catalan* and *Menard* alleged the basic facts giving rise to a plausible inference that the defendants committed a tort. *See Menard*, 698 F.3d at 45 ("one might not expect precise recollection from a man badly injured by a switched track and shortly thereafter hit and dragged under the train"); *Garcia-Gatalan*, 734 F.3d at 101-02 (plaintiff alleged "she slipped and fell on liquid then existing there, sustaining serious injuries. No sign warned that the floor was wet."); *compare Saldivar v. Racine*, 818 F.3d 14, 23 (1st Cir. 2016) (refusing to apply *Garcia-Catalan* because missing link was not "plausible simply by appeal to common sense").

In contrast, McEwen's complaint contains *no* facts that can support the inference that InfoCision used an ATDS—only his unadorned speculation that InfoCision's system might have that latent capacity. Were the Court to accept his complaint as stating an ATDS claim, it would give any person that receives a call from a telemarketer (or, for that matter, from anyone) the right to file a TCPA claim and force the caller to engage in expensive, time-consuming discovery to show that no random or sequential number generator could have been used in making the call. This is contrary to the basic teaching of *Twombly* and *Iqbal* and the First Circuit's construction of those cases.

6

### 2. Under *Facebook*, a plaintiff must be called with a system using a random or sequential number generator.

McEwen's discovery request is premised on a misunderstanding of *Facebook* in any event. First, the Supreme Court did not hold that a viable TCPA claim exists if a telemarketer has technology with the latent "capacity" to generate numbers. Rather, a number generator must actually be used to place the call at issue.[3] *See McEwen*, 2021 WL 1414273, at *7 ("After [*Facebook*], the ATDS portion of the claim requires an allegation that InfoCision used a random or sequential number generator to place a call to Plaintiff's cellphone, *not merely a claim that its dialing system has that capability*.") (emphasis added).

As another district court noted, "[t]o accept Plaintiff's argument that she only has to show that the autodialing system used by Defendant has the capacity to use a random or sequential number generator, even though she concedes that such alleged capacity was not used to make the calls to her (or to the purported class members), would have the effect of imposing liability on a defendant whenever it has such a system, with admittedly no nexus to the alleged harm to the plaintiff." *Barry*, 2021 WL 2936636, at *4; *see also Watts*, 2021 WL 2529613, at *4 ("To claim that defendant might have been using a device that might have the capacity to randomly or sequentially generate

---

[3] The FCC had expansively interpreted the term capacity to include calling equipment that *could* function as an ATDS, regardless of its present configuration. *See ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 695-704 (D.C. Cir. 2018). But the D.C. Circuit in *ACA* "invalidated that Order and thereby removed any deference [a court] might owe to the views the FCC." *King v. Time Warner Cable Inc.*, 894 F.3d 473, 477 (2d Cir. 2018). Following *ACA* and before *Facebook*, many courts interpreted capacity to mean "a device's current functions, absent any modifications to the device's hardware or software." *Id.* at 481; *see also Panzarella v. Navient Sols., LLC*, 2020 WL 3250508, at *3 (E.D. Pa. June 16, 2020) ("decisions by the D.C. Circuit and the Third Circuit clarify that the Court should only consider the *present* capacity in deciding whether Defendant's ININ dialing system is an ATDS") (emphasis in original).

numbers is clearly speculation. Instead, a TCPA complaint must include more robust details to sufficiently allege the use of an ATDS.") (internal quotations and citations omitted).  As explained above, McEwen's allegations show that InfoCision did not use a random or sequential number generator to call him.

The Supreme Court also did not hold that technology qualifies as an ATDS if it merely uses a random or sequential number generator to "pick" numbers "store[d]" on a "preproduced list."  *See Facebook*, 141 S. Ct. at 1172 n. 7 ("[A]n autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time.") (citing Brief for Professional Association for Customer Engagement et al. as Amici Curiae).  Rather, "in footnote 7," "the Supreme Court is discussing the process . . . in which the 'preproduced list' is one that is 'sequentially generated and stored.'"  *Barry*, 2021 WL 2936636, at *6.  In other words, a device that uses a random or sequential number generator to produce numbers *and* stores those numbers on a preproduced list might be an ATDS.  Thus, the "preproduced list" must itself be randomly generated.  *See also Hufnus*, 2021 WL 2585488, at *1 (explaining that the Brief for Professional Association for Customer Engagement et al. "makes clear that the 'preproduced list' of phone numbers referenced in the footnote was itself created through a random or sequential number generator"); *Timms v. USAA Fed. Sav. Bank*, 2021 WL 2354931, at *6 (D.S.C. June 9, 2021) (noting the amicus brief "explained that the 1988 technology functions, in part, by creating an 'array' or list of telephone numbers that is sequentially generated and stored" and "[i]n a separate step, the equipment randomly generates a number").

8

Here, as explained above, McEwen's allegations show that his number was not randomly or sequentially generated. His ATDS claim therefore fails.

### III. McEwen's artificial or prerecorded voice theory also fails.

McEwen's other basis for suing InfoCision fares no better. He claims that InfoCision violated the TCPA by "using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." (First Am. Compl. ¶ 69; *see also id.* ¶¶ 25, 32 (stating that InfoCision "uses" or "utilizes" an artificial or prerecorded voice).) McEwen offers no factual allegations to support that claim. In fact, aside from the above recitation of the statute, McEwen does not describe receiving a single InfoCision call where he heard an artificial or prerecorded voice.

Thus, the Court should dismiss McEwen's prerecorded voice theory, just as courts around the country have done in similar cases. *See Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 641 (5th Cir. 2015) (for liability to attach "an artificial or prerecorded voice must actually play"); *Reo v. Caribbean Cruise Line, Inc.*, 2016 WL 1109042, at *4 (N.D. Ohio Mar. 18, 2016) (dismissing TCPA claim that lacked "description of the content of the calls . . . or why they believed that an 'artificial or prerecorded voice' was used"); *Daniels v. ComUnity Lending, Inc.*, 2015 WL 541299, at *7 (S.D. Cal. Feb. 9, 2015) (dismissing TCPA claim because plaintiff simply alleged calls with "prerecorded voice[s]" but included "no facts to make this allegation plausible"); *Winters v. Quicken Loans Inc.*, 2020 WL 5292002, at *4 (D. Ariz. Sept. 4, 2020) (dismissing claim as insufficiently plead because complaint only included conclusory allegation that caller used an "artificial or prerecorded voice").

Indeed, a quick review of the parties' pleadings shows that InfoCision did *not* use the alleged prerecorded voice. In his description of InfoCision's March 6 call—the only

9

call McEwen describes with any detail—McEwen states that, upon answering, "he was initially greeted by a brief pause, and then he was connected to a live person." (First Am. Compl. ¶ 44; *see also* Dkt. No. 29 ¶ 44 (InfoCision's Answer to McEwen's First Am. Compl.) ("Defendant admits that Plaintiff was immediately connected to a live operator when he answered the phone on March 6, 2020").)

If McEwen intends to rely on calls made to putative class members to pursue his prerecorded voice theory, that strategy does not work because "[w]hen a class action is filed, it includes only the claims of the named plaintiff." *Jalbert v. U.S. Sec. & Exch. Comm'n*, 945 F.3d 587, 594 (1st Cir. 2019). McEwen, as the named plaintiff, "'must allege and show that [he] personally [has] been injured, not that injury has been suffered by other, unidentified members of the class to which [he] belong[s] and which [he] purport[s] to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) (same). McEwen has not—and cannot—allege any facts showing he received a call with a prerecorded voice. His TCPA claim is therefore implausible as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment for Defendants on Counts A and B of McEwen's First Amended Complaint and should dismiss Counts A and B with prejudice. In addition, the Court should grant the NRA's motion to dismiss Counts C through F (*see* Dkt. No. 31) and dismiss those claims as to the NRA for the same reasons that the Court dismissed them as to InfoCision (*see* Dkt. No. 54, pp. 10-12, 16).

Dated: July 27, 2021

Respectfully submitted,

*/s/ Daniel M. Kavouras*
Terry M. Brennan (pro hac vice)
Sam A. Camardo (pro hac vice)
Daniel M. Kavouras (pro hac vice)
BakerHostetler LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
T (216) 861-7145
F (216) 696-0740
tbrennan@bakerlaw.com
scamardo@bakerlaw.com
dkavouras@bakerlaw.com

Patrick Strawbridge
Maine Bar No. 10024
Consovoy McCarthy PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(617) 227-0548
patrick@consovoymccarthy.com

*Attorneys for Defendants*