United States District Court
District Of Maine

| | | |
|---|---|---|
| Travis McEwen, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Docket No. 2:20-cv-00153-LEW |
| National Rifle Association of America, | ) ) | |
| and | ) ) | |
| InfoCision, Inc. d/b/a InfoCision Management Corporation, | ) ) ) | |
| Defendants. | ) | |

**Second Amended Class Action Complaint
Injunctive Relief Sought; And Demand For Jury Trial**

1.      Under the Telephone Consumer Protection Act ("TCPA"), 47

U.S.C. § 227, and applicable regulations, Plaintiff Travis McEwen brings this

Class Action Complaint against the National Rifle Association of America

and InfoCision, Inc. to: (1) stop their unlawful practices of making unsolicited

telemarketing calls with  an automatic telephone dialing system ("ATDS"), as

defined in the TCPA,[1] without consumers' prior express consent; (2) stop their

unlawful practices of (a) calling consumers who are on the National Do Not

---

[1] The TCPA defines an ATDS as "equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C.A. § 227(a)(1).

Call Registry or (b) violating the requirements for callers to maintain and honor an internal do-not-call list; and (3) obtain redress for all persons injured by Defendants' unlawful conduct, including for willfully and knowingly violating the TCPA and applicable regulations. Plaintiff alleges as follows upon personal knowledge as to his own acts and experiences, and as to all other matters upon information and belief, including investigation conducted by his attorneys.

## I.   Nature of Action

2.   Together, the National Rifle Association of America ("the NRA") and InfoCision, Inc. ("InfoCision") have created and sustained an aggressive—and unlawful—telemarketing campaign aimed at selling memberships and soliciting contributions to the NRA. As part of this nationwide campaign, Defendants use equipment that has the capacity to produce or store numbers using a sequential or random number generator to call consumers across the country without those consumers' consent, including to consumers whose numbers are listed on the National Do Not Call Registry, and in violation of the requirements for callers to maintain and honor an internal do-not-call list.

3.   In addition, upon information and belief, InfoCision engages in unlawful telemarketing campaigns for clients other than the NRA. On behalf

of those clients, InfoCision uses equipment that has the capacity to produce or store numbers using a sequential or random number generator to initiate telephone calls to consumers across the country without those consumers' consent, including consumers whose numbers are listed on the National Do Not Call Registry, and in violation of the requirements for a caller to maintain and honor an internal do-not-call list.

4.      Plaintiff is one of numerous consumers whose rights have been violated by these unlawful telemarketing practices. Plaintiff placed his telephone number on the National Do Not Call Registry in 2003 to avoid unsolicited telemarketing calls, and he expressly asked not to receive calls from the NRA and InfoCision. Nonetheless, he received a barrage of calls from InfoCision on behalf of the NRA asking him to join the organization, as well as numerous calls from InfoCision on behalf of other entities.

5.      By making these telephone calls, Defendants caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. These harms and injuries include the aggravation, nuisance, and invasions of privacy that result from the receipt of unwanted calls, in addition to the amounts consumers paid to their wireless carriers for the receipt of unwanted calls.

6.      And the calls interfered with the consumers' use and enjoyment of their cellphones, including the related data, software, and hardware

components. Defendants also caused substantial injury to the phones of Plaintiff and the Class members by causing wear and tear on their property, consuming battery life, and appropriating cellular minutes.

7.      Plaintiff brings this class action for violations of the TCPA against Defendants and their present, former, and future direct and indirect parent companies, subsidiaries, affiliates, agents, and related entities.

8.      Plaintiff seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers in violation of the TCPA, in addition to all statutory damages under the TCPA, costs and reasonable attorneys' fees.

## II.      Jurisdiction and Venue

9.      This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343 because Plaintiff's claims under 47 U.S.C. § 227 arise under the laws of the United States and under an Act of Congress providing a private right of action for the deprivation of specified rights and for the protection of civil rights.

10.     This Court has personal jurisdiction over Defendants because they do business in Maine, and Defendants committed many of the wrongful acts alleged in this Complaint in Maine.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Plaintiff received the telephone calls at issue within this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District. Under Rule 3(b) of the Rules of this Court, this action is properly filed in Portland.

12.     Under Fed. R. Civ. P. 38(b) and Local Rule 38, Plaintiff demands a trial by jury on all claims and defenses triable to a jury.

## III.   Parties

13.     Plaintiff Travis McEwen is a citizen of the United States and is a resident of the town of Casco in Cumberland County, Maine.

14.     Defendant the NRA is a corporation incorporated and existing under the laws of the State of New York with its headquarters in Fairfax, Virginia. The NRA, both directly and through various affiliates, conducts business throughout the state of Maine and the United States.

15.     Defendant InfoCision is a corporation incorporated and existing under the laws of the State of Delaware with its headquarters in Akron, Ohio. InfoCision, both directly and through various affiliates, conducts business throughout the state of Maine and the United States.

## IV.    Factual Allegations

### A.    Defendants use unsolicited telemarketing calls to solicit memberships for the NRA.

16.    The NRA is a membership-based organization. Ostensibly, it solicits and collects membership fees to further its work in firearms advocacy, training, and education, but a major percentage of those fees go directly into the pockets of its directors and officers.

17.    The NRA, on its own and through agents like InfoCision, has an all-too-familiar and plainly unlawful method of recruiting new members: unsolicited telemarketing.

18.    InfoCision is the nation's second-largest privately held teleservices company. It provides "a full spectrum of direct marketing services" to its clients, including through the use of more than 40 call centers across the country.

19.    According to InfoCision's website, "InfoCision's mission is to provide direct marketing solutions that deliver our clients the highest possible return on investment (ROI)." One way InfoCision does that is by "investing in technologies that enable more efficient operations."[2]

---

[2] "A Commitment to Excellence – The InfoCision Difference," https://www.infocision.com/about-us/.

20.    In a recent press release touting InfoCision's adoption of new artificial intelligence technology, InfoCision's Chief Technology Officer stated, "As a leading provider of direct marketing solutions, InfoCision always relies on the use of advanced technologies . . . ."

21.    The NRA has a marketing contract with InfoCision that instructs or allows InfoCision to make telemarketing calls on behalf of the NRA. Upon information and belief, under that contract, InfoCision is paid more than half of the funds raised in telemarketing calls for the NRA.

22.    In February 2018, the news media reported that, as of that date, InfoCision had conducted five fundraising campaigns for the NRA since 2013 that collectively raised more than $50 million. But only 43 percent of those funds were paid to the NRA. The rest went to InfoCision.[3]

23.    InfoCision and the NRA place thousands of telemarketing calls each day on behalf of the NRA to consumers nationwide. InfoCision makes these calls for the express purpose of soliciting call recipients to purchase memberships or other products for the financial benefit of InfoCision and the NRA.

24.    InfoCision also makes telemarketing calls on behalf of other entities. InfoCision places many of these calls to numbers that consumers

---

[3] Lachlan Markay, "The NRA is Being Sued over Its Relentless Telemarketing Campaigns," The Daily Beast (February 16, 2018), https://www.thedailybeast.com/the-nra-is-being-sued-over-its-relentless-telemarketing-campaigns.

have placed on the National Do Not Call Registry or to numbers that consumers have asked Defendants not to call, or otherwise in violation of the requirements for a caller to maintain and honor an internal do-not-call list.

25.     The NRA has a sister organization: the NRA Foundation, which—unlike the NRA—is a 501(c)(3) charitable organization, organized and existing under the laws of the District of Columbia. As the NRA notes on its website, the NRA Foundation operates as a distinct entity with a distinct purpose: "Establishing the NRA Foundation, a 501 (c)(3) tax-exempt organization, provided a means to raise millions of dollars to fund gun safety and educational projects of benefit to the general public. Contributions to the Foundation are tax-deductible . . . ."[4]

26.      Regarding calls it made on behalf of the NRA, InfoCision did not place those calls on behalf of the NRA Foundation, and the NRA Foundation does not solicit memberships in the NRA.

27.     As the NRA specifically notes on the membership application portion of its website,[5] a portion of the "membership" fees it receives are used as payment for goods that it provides its members:

> Contributions, gifts or membership dues made or paid to the National Rifle Association of America are not refundable or transferable and are not deductible as charitable contributions for Federal income tax purposes. $3.75 of the membership dues are designated for magazine subscription. Overseas addresses will be subject to additional postage charges. There will be an annual fee of $5 per year for Canada and $10 per year for all other countries.

https://home.nra.org/about-the-nra/ (last visited April, 2020).

[5] https://membership.nra.org/Join/Annuals (last visited August 27, 2020).

28.     The NRA's memberships come with certain benefits—including a

free gift and a subscription to the NRA's publications.[3]



29.     In making calls soliciting memberships for the NRA dating back

to May 5, 2016, Defendants and their agents have used an ATDS, namely a

device that has the capacity to produce or store numbers using a random or

sequential number generator.

30.    In making these calls, Defendants contact those with whom they do not have a prior relationship—let alone consent to receive the calls. InfoCision has admitted that it uses vendors to collect phone numbers for individuals who have had no previous contact with it or the entities on whose behalf it places calls, including the NRA.

31.    In response to an individual who complained to the Better Business Bureau that InfoCision called him on behalf of the NRA—even though he had never been a member of the NRA—InfoCision explained: "Prior to a telemarketing campaign, if phone numbers are unavailable from a client, InfoCision Management Corporation may use outside phone look up vendors to obtain phone numbers of current, past, or prospective members of the organization to contact them by phone."[6] As to that particular individual, it said, "[t]he phone number InfoCision Management Corporation called was not provided by the National Rifle Association."[7]

32.    Defendants knowingly made (and continue to make) unsolicited and unlawful calls with an ATDS, and knowingly continued to make those calls after members of the Classes requested that they stop. So Defendants

---

[6] https://www.bbb.org/us/oh/akron/profile/marketing-programs/infocision-management-corporation-0272-7034/complaints (last visited March 19, 2020).
[7] *Id.*

not only invaded the personal privacy of Plaintiff and members of the Classes, but also intentionally and repeatedly violated the TCPA.

33.    Since May 5, 2016 to the present, the NRA knew or should have known that InfoCision was making and was continuing to make unsolicited calls, on the NRA's behalf, using an ATDS and to numbers on the National Do Not Call Registry. But the NRA has failed to take effective steps to prevent InfoCision from making those unlawful calls.

**B.    InfoCision used unsolicited telemarketing calls to solicit consumers on behalf of its other clients.**

34.    InfoCision has marketing contracts with other clients in addition to the NRA. Those clients retain InfoCision to make telemarketing calls on their behalf.

35.    InfoCision places thousands of telemarketing calls each day on behalf of its clients to consumers nationwide. InfoCision makes these calls for the express purpose of, among other things, soliciting call recipients to purchase memberships or other products for the financial benefit of InfoCision and its clients. InfoCision places many of these calls to numbers that consumers have placed on the National Do Not Call Registry or in violation of the requirement for a caller to maintain and honor an internal do-not-call list.

36.     In making calls on behalf of its clients, InfoCision utilizes an ATDS that has the capacity to produce or store numbers using a random or sequential number generator.

37.     In making these calls, InfoCision contacts those with whom it does not have a prior relationship—let alone consent to receive the calls.

C.     Defendants repeatedly made unsolicited phone calls to Plaintiff in violation of the TCPA.

38.     Plaintiff duly and properly registered his cell phone number with the National Do Not Call Registry in 2003 for the express purpose of avoiding unsolicited telemarketing calls.

39.     Plaintiff had a membership with the NRA, but his membership expired in about 2018, and he did not renew it.

40.     Upon information and belief, in about 2014 or 2015, Plaintiff was contacted by InfoCision on behalf of the NRA. During that call, Plaintiff requested that Defendants stop calling him and that he be placed on their internal do-not-call list.

41.     Nonetheless, between 2017 and March 6, 2020, Plaintiff received about 66 calls from InfoCision.

42.     Frustrated with the annoyingly persistent calls, Plaintiff answered calls in September and November 2017 from InfoCision to say that

he was not interested and to ask InfoCision to stop calling him. But Plaintiff continued to receive unsolicited calls from InfoCision.

43. In about December 2019, Plaintiff began receiving phone calls several times per week from Defendants aimed at getting Plaintiff to buy a $150 membership in the NRA.

44. Between December 2019 and March 6, 2020, InfoCision made about 32 unwanted calls to Plaintiff on behalf of the NRA. In other words, though he had properly registered his cell phone number with the National Do Not Call Registry in 2003, asked to be placed on the internal do-not-call list with InfoCision and the NRA, and also asked InfoCision to stop calling him, Defendants made dozens of unwanted calls to Plaintiff.

45. As InfoCision has admitted, "InfoCision's dialing system keeps a detailed log of calls made and connected." ECF No. 17, Exhibit 3.

46. The log of calls made to Plaintiff by InfoCision registered (1) the phone number called; (2) the "Finishcode"; (3) the "Reason"; (4) the "Disposition Code"; (5) the "Disposition Description"; and (6) the call date and time. The contents of the call were also automatically recorded.

47. The "Disposition Description" field includes notations like "No Thank You"; "Answering Machine Expired"; "Abandoned Call"; "Test Call"; "Transfer to Backend"; "General Not Interested"; "Callback"; and "Max Attempts 089000." The "Finishcode" field contains notations like "Scheduled,"

"Call successfully completed," "No Answer," and "Machine – System Hang up on Machine."

48.     For calls initiated by Mr. McEwen, the Disposition Description reads "ACD-IVR," an abbreviation that commonly stands for "Automatic Call Distribution" and "Interactive Voice Response" in the telemarketing industry.

49.     These disposition descriptions and finish codes match those used by an "Interaction Dialer Manager" created by Genesys Telecommunications Laboratories, Inc.[8] As explained on the Genesys website, "[t]he primary function of the Interaction Dialer is to provide an efficient automated predictive dialing system."[9]

50.     According to Genesys, the "Interaction Dialer conducts campaigns by contacting a list of people according to a prescribed list of rules." It "places outbound telephone calls for campaigns, plays .wav files to answering machines, sends faxes to fax machines, and routes calls answered by a live person to an Interaction Attendant profile or directly to Dialer agents."[10]

---

[8] https://help.genesys.com/pureconnect/mergedprojects/wh_dlr/mergedProjects/
dialer_manager_help2/desktop/wrap_up_codes_and_categories.htm
[9] https://help.genesys.com/pureconnect/mergedprojects/wh_dlr/mergedProjects/
dialer_manager_help2/desktop/automatic_dialing_vs_manual_calling.htm
[10] https://help.genesys.com/pureconnect/mergedprojects/wh_is/desktop/
interaction_dialer_category.htm

51.    On about March 6, 2020, after months of receiving this barrage of unsolicited and annoying calls, Plaintiff decided to answer a call.

52.    Like the calls Plaintiff had received before from InfoCision, the March 6, 2020 call was placed by a dialing system that had the capacity to store or produce numbers to be called using a random or sequential number generator.

53.    InfoCision has admitted that this call was placed by its "dialing system" and was transferred to a "live communicator" only after Mr. McEwen answered. ECF No. 17, Exhibit 3.

54.    When Plaintiff answered, he was initially greeted by a brief pause, and then he was connected to a live person, who told him she was a paid professional fundraiser with InfoCision, working with the NRA.

55.    She tried to persuade him to join the NRA again with a pitch for some really great deals. Specifically, she pressed Plaintiff to buy the $150 NRA membership package for five years of membership, which included a new, limited edition NRA jersey (she claimed it had a retail store value of $70), and a magazine subscription.

56.    Then Plaintiff asked the representative for the NRA's contact information and the contact information for the entity that had placed the automated call. She repeated that InfoCision was the entity that had placed

the call, and she provided the contact information of the NRA and InfoCision for that call.

57.    The representative then stated that she was happy to remove his number but that as a nonprofit organization "we are not given a heads up that you're not to be called so only until someone like you tells us to remove you do we know to do that."

58.    Plaintiff responded that he was pretty sure he had done that before. And he accepted her offer to remove his number from their file. The representative then stated that she had added his name and phone number to their do-not-call list.

59.    When Plaintiff later called back the numbers on his cell phone from which InfoCision had recently placed calls to him on behalf of the NRA, Plaintiff was connected to an automated pre-recorded message, and he was not given the option to speak with a live person.

60.    Defendants' conduct in placing these calls to Plaintiff violated the TCPA.

61.    Defendants willfully and knowingly violated the TCPA and the applicable regulations.

**D.     NRA is not a nonprofit as defined by the TCPA.**

62.     The TCPA exempts calls "by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4).

63.     Despite its 501(c)(4) tax exempt status, the NRA is not a "nonprofit organization" as defined in the TCPA and its regulations. Though it bills itself as "America's longest-standing civil rights organization," the NRA's primary purpose is to make money for its leaders, including Executive Vice President Wayne LaPierre.

64.     On August 6, 2020, the State of New York filed a court action seeking to dissolve the NRA under New York laws governing nonprofit corporations. The lawsuit details how the top officials for the NRA have illegally participated in the diversion of tens of millions of dollars for their personal use, including trips for them and their families to the Bahamas, private jets, expensive meals, and other private travel.

65.     New York's court action alleges that this diversion of millions of dollars by NRA top officials for their personal use has occurred in addition to millions of dollars the four top officials were already receiving in grossly excessive salaries and bonuses.

66.     New York's court action specifically charges that LaPierre has spent hundreds of thousands of dollars of NRA assets for private plane trips for him and his family, including private air charters to the Bahamas costing

over $500,000; secured a post-employment contract with the NRA, without

board approval, currently estimated to be worth over $17 million; and has

spent millions of dollars every year in NRA funds for private "security" costs

for himself and his family.

67.    Because dating back to May 5, 2016, NRA executives have been

receiving "exorbitant salaries" and "siphon[ing] off corporate assets" for their

own personal use, the NRA was not and is not in fact operating as a nonprofit

entitled to the statutory exemption in the TCPA for nonprofit organizations.

*Zimmerman v. Cambridge Credit Counseling Corp.*, 409 F.3d 473, 478 (1st

Cir. 2005).

## V.    Class Action Allegations

68.    Plaintiff brings this action individually and on behalf of all other

persons similarly situated ("Class Members").

69.    Under Federal Rule of Civil Procedure 23(b)(2) and (b)(3),

Plaintiff brings this action as a class action on behalf of the Classes of persons

defined as:

**National ATDS Class**
All persons within the United States who received a non-emergency
telephone call from Defendants through the use of an ATDS, and who
did not provide prior express consent for such calls, at any time from
May 5, 2016 to the date of trial.

**National Do-Not-Call Subclass**
All persons within the United States who were on the National Do-Not-Call Registry and received more than one solicitation telephone call from Defendants within any 12 month period from May 5, 2016 to the date of trial.

**Internal Do-Not-Call Subclass**
All persons within the United States who requested to be placed on InfoCision's or the NRA's internal do-not-call list or were called by InfoCision in violation of the requirements under 47 U.S.C. § 227(c) and 47 C.F.R. 64.1200(d) for a caller to maintain and honor an internal do-not-call list and received more than one solicitation telephone call from or on behalf of Defendants within any 12 month period from May 5, 2016 to the date of trial.

70.    Excluded from the Classes are Defendants and any entities in which they have a controlling interest, Defendants' agents and employees, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

71.    **Numerosity**. The Classes are so numerous that joinder of all members is impracticable. Upon information and belief, the Classes have thousands of members. Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

72.    **Commonality**. There are numerous questions of law and fact common to Plaintiff and the members of the Classes. These common questions of law and fact include, but are not limited to, the following:

a.  Whether Defendants utilized an automatic telephone dialing system to place non-emergency calls to members of the Classes;

b.  Whether Defendants can meet their burden of showing they obtained prior express consent to make such calls;

c.  Whether Defendants' conduct in making these calls was willful or knowing or both;

d.  Whether members of the Classes are entitled to statutory damages; and

e.  Whether Defendants should be enjoined from making such calls in the future.

73.  **Typicality**. Plaintiff's claims are typical of the claims of the Classes. Plaintiff's claims, like the claims of the Classes, arise out of the same common course of conduct by Defendants. Specifically, as a person who received non-emergency telephone calls from Defendants using an ATDS, without his prior express consent within the meaning of the TCPA, Plaintiff asserts claims that are typical of each Class member who also received such phone calls.

74.  **Adequacy**. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable attorneys who are experienced trial lawyers with significant experience in

complex and class action litigation, including consumer class actions and robocall class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel has interests that are contrary to or that conflict with those of the proposed Classes.

75.    **Predominance**. Defendants have engaged in a common course of conduct toward Plaintiff and the Classes. The common issues arising from this conduct that affect Plaintiff and the Classes predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

76.    **Superiority**. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interest of individual Class members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for violation of the TCPA are too small to make it practical to prosecute an individual action. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

## VI.   Claims for Relief

### A.   First Claim for Relief
### Strict Liability Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(b)
### *On Behalf of the National ATDS Class*

77.     Plaintiff realleges all allegations set forth above.

78.     Through their alleged conduct, Defendants have violated 47 U.S.C. § 227(b)(1) by using an ATDS to make calls to telephone numbers assigned to a cellular telephone service in the United States without the prior express consent of the called party.

79.     As a result of Defendants' violations of 47 U.S.C. § 227, Plaintiff and each of the National ATDS Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute under 47 U.S.C. § 227(b)(3)(B).

80.     Plaintiff and National ATDS Class members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

81.     Plaintiff and National ATDS Class members are also entitled to an award of attorneys' fees and costs.

### B.   Second Claim for Relief
### Willful and Knowing Violations of the TCPA 47 U.S.C. § 227(b)
### *On Behalf of the National ATDS Class*

82.     Plaintiff realleges all allegations set forth above.

83.     Defendants willfully or knowingly (or both willfully and knowingly) violated § 227(b) of the TCPA or the applicable regulations prescribed under this subsection. The alleged acts and omissions of Defendants constitute numerous and multiple willful or knowing (or both) violations of § 227(b) of the TCPA.

84.     As a result of Defendants' willful or knowing (or both) violations of 47 U.S.C. § 227(b), Plaintiff and each of the National ATDS Class members are requesting an award of $1,500 in statutory damages under 47 U.S.C. § 227(b)(3)(C) for every call in violation of 47 U.S.C. § 227(b) and the applicable regulations.

85.     Plaintiff and National ATDS Class members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of 47 U.S.C. § 227(b) in the future.

86.     Plaintiff and National ATDS Class members are also entitled to an award of attorneys' fees and costs.

### C.   Third Claim for Relief
### Violations of the TCPA, 47 U.S.C. § 227(c) & 47 C.F.R. 64.1200(c), (e)
### *On Behalf of the National Do-Not-Call Subclass*

87.     Plaintiff realleges all allegations set forth above.

88.     Defendants made telephone calls to Plaintiff and other consumers whose numbers were listed on the National Do-Not-Call Registry.

89.    Plaintiff and members of the National Do-Not-Call Subclass received at least two calls from Defendants within a 12-month period.

90.    As a result of Defendants' violations of 47 U.S.C. § 227(c) and the regulations prescribed under this subsection, including but not limited to 47 C.F.R. 64.1200(c) and (e), Plaintiff and members of the National Do-Not-Call Subclass are each entitled to $500 for each and every telephone call in violation of § 227(c) of the TCPA and the regulations prescribed under this subsection, including but not limited to 47 C.F.R. 64.1200(c), (e).

### D.    Fourth Claim for Relief
### Willful and Knowing Violations of the TCPA, 47 U.S.C. § 227(c) & 47 C.F.R. 64.1200(c), (e)
### On Behalf of the National Do-Not-Call Subclass

91.    Plaintiff realleges all allegations set forth above.

92.    Defendants willfully or knowingly (or both willfully and knowingly) violated 47 U.S.C. § 227(c) and the regulations prescribed under this subsection, including but not limited to 47 C.F.R. 64.1200(c), (e). The alleged acts and omissions of Defendants constitute numerous and multiple willful or knowing (or both) violations of 47 U.S.C. § 227(c) and the regulations prescribed under this subsection, including but not limited to 47 C.F.R. 64.1200(c), (e).

93.    As a result of Defendants' willful or knowing (or both) violations of 47 U.S.C. § 227(c), Plaintiff and each of the National Do-Not-Call Subclass

members are requesting an award of $1,500 in statutory damages under 47

U.S.C. § 227(c)(5)(C) for each and every call in violation of 47 U.S.C. § 227(c)

and the regulations prescribed under that subsection, including but not

limited to 47 C.F.R. 64.1200(c), (e).

94.     Plaintiff and National Do-Not-Call Subclass members are also

entitled to and do seek injunctive relief prohibiting Defendants' violation of

the TCPA in the future.

95.     Plaintiff and National Do-Not-Call Subclass members are also

entitled to an award of attorneys' fees and costs.

### E.     Fifth Claim for Relief
### Violations of the TCPA, 47 U.S.C. § 227(c) & 47 C.F.R. 64.1200(d)
### *On Behalf of the Internal Do-Not-Call Subclass*

96.     Plaintiff realleges all allegations set forth above.

97.     On behalf of the NRA, InfoCision made telephone calls to

Plaintiff and other consumers in violation of the requirements for callers to

maintain and honor an internal do-not-call list. *See* 47 U.S.C. § 227(c); 47

C.F.R. 64.1200(d).

98.     InfoCision made telephone calls to Plaintiff and other consumers

on behalf of other entities in violation of the requirements for callers to

maintain and honor an internal do-not-call list. *See* 47 U.S.C. § 227(c); 47

C.F.R. 64.1200(d).

99.    Plaintiff and members of the Internal Do-Not-Call Subclass received at least two calls from Defendants within a 12-month period in violation of the TCPA requirements for a caller to maintain and honor an internal do-not-call list.

100.    By calling consumers who asked not to receive calls from Defendants, Defendants have unlawfully failed to honor those subscribers' do-not-call requests within 30 days after the date the request was made or otherwise have violated the TCPA requirements for a caller to maintain and honor an internal do-not-call list.

101.    As a result of Defendants' violations of 47 U.S.C. § 227(c) and the regulations prescribed under this subsection, including but not limited to 47 C.F.R. 64.1200(d), Plaintiff and members of the Internal Do-Not-Call Subclass are each entitled to $500 for each and every telephone call in violation of § 227(c) of the TCPA and the regulations prescribed under this subsection, including but not limited to 47 C.F.R. 64.1200(d).

### F.    Sixth Claim for Relief
**Knowing and Willful Violations of the TCPA, 47 U.S.C. § 227(c) &
47 C.F.R. 64.1200(d)**
*On Behalf of the Internal Do-Not-Call Subclass*

102.    Plaintiff realleges all allegations set forth above.

103.    Defendants willfully or knowingly (or both willfully and knowingly) made telephone calls to Plaintiff and other consumers over 30

days after they asked not to receive calls from Defendants or otherwise in violation of the TCPA requirements for a caller to maintain and honor an internal do-not-call list.

104.   Plaintiff and members of the Internal Do-Not-Call Subclass received at least two calls from Defendants within a 12-month period in violation of the TCPA requirements for a caller to maintain and honor an internal do-not-call list.

105.   As a result of Defendants' willful or knowing (or both) violations of 47 U.S.C. § 227(c), Plaintiff and each of the Internal Do-Not-Call Subclass members are requesting an award of $1,500 in statutory damages under 47 U.S.C. § 227(c)(5)(C) for each and every call in violation of 47 U.S.C. § 227(c) and the regulations prescribed under that subsection, including but not limited to 47 C.F.R. 64.1200(d).

106.   Plaintiff and Internal Do-Not-Call Subclass members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

107.   Plaintiff and Internal Do-Not-Call Subclass members are also entitled to an award of attorneys' fees and costs.

## Prayer for Relief

Plaintiff, on his own behalf and on the behalf of the Classes, prays for judgment against Defendants as follows:

A.    Certification of the proposed Classes;

B.    Appoint Plaintiff as representative of the Classes;

C.    Appoint the undersigned counsel as counsel for the Classes;

D.    Award Plaintiff and the Classes statutory, compensatory, and exemplary damages, as allowed by law;

E.    Award Plaintiff and the Classes attorneys' fees and costs, as allowed by law and/or equity;

F.    Enjoin Defendants from making unsolicited telemarketing calls, and otherwise protecting the interests of the Classes;

G.    Grant Plaintiff leave to conform to the evidence produced at trial; and

H.    Grant such other and further relief as the Court deems appropriate.

Date: December 27, 2021                    Respectfully submitted,


                                           /s/ David G. Webbert
                                           David G. Webbert
                                           Shelby Leighton
                                           Johnson, Webbert & Garvan, LLP
                                           160 Capitol Street, P.O. Box 79
                                           Augusta, Maine 04332-0079
                                           Telephone: 207.623.5110
                                           Email: dwebbert@work.law
                                           Email: sleighton@work.law


                                           /s/ Kim D. Stephens
                                           Kim D. Stephens, WSBA #11984
                                           Jason T. Dennett, WSBA #30686
                                           Kaleigh N. Powell, WSBA #52684
                                           Tousley Brain Stephens PLLC
                                           1200 Fifth Avenue, Suite 1700
                                           Seattle, Washington 98101-3147
                                           Telephone: 206.682.5600
                                           Email: kstephens@tousley.com
                                           Email: jdennett@tousley.com
                                           Email: kpowell@tousley.com


                                           Patrick H. Peluso
                                           Woodrow & Peluso LLC
                                           3900 East Mexico Avenue, Suite 300
                                           Denver, Colorado 80210
                                           Telephone: 720.213.0676
                                           Email: ppeluso@woodrowpeluso.com


                                           *Attorneys for Plaintiff and the Putative Class*

## Certificate of Service

I hereby certify that on December 27, 2021, I electronically filed this filing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ David G. Webbert
David G. Webbert, Esq.
Johnson, Webbert & Garvan, LLP
160 Capitol Street, P.O. Box 79
Augusta, Maine 04332-0079
(207) 623-5110
dwebbert@work.law